UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RESIDENTS OF GORDON PLAZA,                        CIVIL ACTION
INC.

VERSUS                                              NO. 20-1461

LATOYA CANTRELL, ET AL.                          SECTION "R" (3)


## ORDER AND REASONS

Defendants Latoya Cantrell and the City of New Orleans (collectively "the City") move to dismiss this matter.[1] Plaintiff, Residents of Gordon Plaza, Inc. ("Residents") opposes the motion.[2] For the following reasons, the Court grants the motion.


I.     BACKGROUND

This case is a dispute over environmental conditions at Gordon Plaza. Plaintiff alleges that Gordon Plaza sits atop the former Agriculture Street Landfill ("ASL").[3] According to the complaint, ASL was a City-operated dump from 1909-57 and from 1965-66.[4] During those years, plaintiff alleges,

---

[1]     *See* R. Doc. 13.
[2]     *See* R. Doc. 16.
[3]     *See* R. Doc. 1 at 6 ¶ 28.
[4]     *See id.* at 5 ¶ 24.

the City disposed of hazardous chemicals and solid waste at ASL.[5]  And after the City ceased using ASL for waste-disposal purposes, plaintiff contends that the City developed approximately 47 acres of ASL for residential use in the 1970s and 1980s.[6]  Plaintiff asserts that those residential developments include Gordon Plaza.[7]

Plaintiff alleges that in 1994, the Environmental Protection Agency ("EPA") placed the former ASL site on its "National Priorities List," noting concern about arsenic, lead, and polynuclear aromatic hydrocarbons levels.[8] Following ASL's placement on the National Priorities List, plaintiff alleges that from 1994 to 2001, the EPA fenced off a portion of ASL,[9] removed two feet of soil, and placed a permeable "geotextile mat"[10] over some contaminated areas, and covered those areas with approximately one foot of soil.[11]  But, the Residents contend, the EPA did not replace soil or install a geotextile mat on at least nine residential properties at Gordon Plaza.[12]

---

[5]      *See id.* at 6 ¶ 26.
[6]      *See id.* at 6 ¶ 28.
[7]      *See id.*
[8]      *See id.* at ¶ 35.
[9]      *See id.* at ¶ 36.
[10]     According to the Fourth Five-Year Report, "[t]he purpose of the geotextile fabric . . . [is] to create a physical barrier between clean cover soils and the underlying contaminated soil."  R. Doc. 13-3 at 18.
[11]     *See* R. Doc. 1 at ¶ 36.
[12]     *See id.* at ¶ 37.

Plaintiff contends that after the EPA completed its work in 2002, it published a "Final Closeout Report" in which the EPA announced that it would take no further action at ASL.[13]

Plaintiff alleges that in 2005, Hurricane Katrina devastated ASL.[14] After the storm, the U.S. Agency for Toxic Substances and Disease Registry ("ATSDR")—a federal public health agency of the U.S. Department of Health and Human Services—allegedly concluded that chemical concentrations at ASL posed a public health hazard.[15]  Plaintiff also contends that flooding and time have eroded the soil the EPA installed between 1994 and 2001.[16]

In 2008, the City entered into a consent decree with the EPA.[17]  The consent decree requires the City to take actions to "protect the remedy"[18] at ASL, and "thereby, the public health or welfare or the environment."[19]  The consent decree requires the City to "maintain the [soil] cap" at Gordon Plaza

---

[13]   *See id.* at 8 ¶ 43.

[14]   *See id.* at 8 ¶ 45.

[15]   *See id.* at 8 ¶ 46.

[16]   *See id.*

[17]   *See* R. Doc. 13-2.

[18]   *See id.* at 9 ¶ 4.  The consent decree defines "remedy" as "the excavation of 24 inches of soil, placement of a permeable geotextile mat/marker on the subgrade, backfilling the excavated area with clean fill, covering the clean fill with grass sod, landscaping and yard restoration, driveway and sidewalk replacement, and final detailing."  *Id.* at 8.

[19]   *See id.* at 9 ¶ 5.

3

and to "provide for appropriate restrictions on use and excavation of the property."[20]

Plaintiff asserts that ASL remains contaminated with harmful chemicals and that those chemicals cause cancer and other harmful health conditions.[21]  On May 15, 2020, the Residents filed a complaint under the citizen suit provision of the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B).[22]  The City filed a motion to dismiss in response.[23]  The City argues that there is no subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1).[24]  In the alternative, the City argues that the Residents fail to state a claim under Federal Rule of Civil Procedure 12(b)(6).[25]  The Court considers the parties' arguments below.

## II.   LEGAL STANDARD

### A.   Rule 12(b)(1)

Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional

---

[20]   *See id.*

[21]   *See id.* at 10-11 ¶¶ 64-71.

[22]   *See* R. Doc. 1.

[23]   *See* R. Doc. 13.

[24]   *See* 13-1 at 1.

[25]   *See id.*

4

power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).  In ruling on a Rule 12(b)(1) motion to dismiss, the Court may rely on (1) the complaint alone, presuming the allegations to be true (2) the complaint supplemented by undisputed facts; or (3) the complaint supplemented by undisputed facts and the Court's resolution of disputed facts.  *Den Norske Stats Ojeselskap As v. HeereMac Vof*, 241 F.3d 420, 424 (5th Cir. 2001); *see also Barrera-Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996).  The party asserting jurisdiction bears the burden of establishing that the district court possesses jurisdiction.  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

### B.    Rule 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss, plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  The Court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff.  *Lormand v. U.S. Unwired, Inc.*, 565 F.3d

228, 239, 244 (5th Cir. 2009). But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

On a Rule 12(b)(6) motion, the Court must limit its review to the contents of the pleadings, including attachments. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). The Court may also consider documents attached to a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims. *Id.* "In addition to facts alleged in the pleadings, however, the district court 'may also consider matters of which [it] may take judicial notice.'" *Hall v. Hodgkins*, 305 F. App'x 224, 227 (5th Cir. 2008) (citing *Lovelace v. Software Spectrum, Inc.*, 78 F.3d 1015, 1017-18 (5th Cir. 1996)).

## III.  DISCUSSION

### A.    Judicial Notice

A court may take judicial notice of adjudicative facts that are not subject to reasonable dispute, either because they are (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b). Conversion of the motion-

to-dismiss into a motion for summary judgment is not required when the Court takes judicial notice under Federal Rules of Evidence 201(b). *See* 5C Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1366 (3d ed.) (noting that matters of which a court can take judicial notice are not considered "matters outside the pleadings" and do not require conversion of a motion to dismiss into a motion for summary judgment); *see also Gen. Retail Servs., Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775, 785 (5th Cir. 2007) (quoting Wright & Miller with approval); *Bethea v. St. Pau. Guardian Ins.*, 2003 WL 292302 (E.D. La. 2003) ("Though the Court may not look beyond the pleadings [in deciding a 12(b)(6) motion], the [C]ourt may take into account matters of public record.").

The Court takes judicial notice of the City's consent decree with the EPA, which the City has attached to its motion to dismiss. *Group Against Smog and Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016) (taking judicial notice of a consent decree and noting that consent decrees are "public records as they are court decisions and final judgments"). The Court also takes judicial notice of the EPA's "Fourth Five-Year Report" pertaining to the ASL site, which is also attached to the City's motion to dismiss.[26] *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011)

---

[26] *See* R. Doc. 13-3.

(affirming district court's decision to take judicial notice of publicly-available documents and transcripts produced by the FDA).

## B.    Subject Matter Jurisdiction

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, subject matter jurisdiction must be decided first because "the court must find jurisdiction before determining the validity of a claim." *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994).  Accordingly, the Court turns first to its subject matter jurisdiction.

The City argues that the Court lacks statutory authority to adjudicate this lawsuit.[27]  The City points to several provisions in RCRA that bar suit under the citizen-suit provision:

> (b) No action may be commenced under [the citizen suit provision] of this section if the [EPA] Administrator, in order to restrain or abate acts or conditions which may have contributed or are contributing to the activities which may present the alleged endangerment . . .
>
> (i) has commenced and is diligently prosecuting an action under section 6973 of this title or under section 106 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980;
>
> (ii) is actually engaging in a removal action under section 104 of the Comprehensive Environmental Response, Compensation and Liability Act of 1980; or

---

[27]    *See* R. Doc. 13-1 at 10-11; R. Doc. 18-1 at 4.

(iv) has obtained a court order (including a consent decree) . . . pursuant to which a responsible party is diligently conducting a removal action, Remedial Investigation and Feasibility Study (RIFS), or proceeding with a remedial action.

42 U.S.C. § 6972(B) (emphases added).  The City argues that the above provisions are jurisdictional, meaning that if the Court finds plaintiff's suit statutorily barred under one of them, it must dismiss for lack of subject-matter jurisdiction.

But the City's argument is unavailing.  The U.S. Supreme Court has made clear that "[w]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 516 (2006); *see also Louisiana Envtl. Action Network v. City of Baton Rouge*, 677 F.3d 737, 749 (5th Cir. 2012) ("Absent such a clear statement from Congress, we hold that the 'diligent prosecution' bar is a nonjurisdictional limitation on citizen suits.").

Moreover, the Fifth Circuit has already clarified that the first of the above subsections—the "diligent prosecution" provision—is "a statutory defense, arising from RCRA itself" and that it "is not jurisdictional." *See Cox v. City of Dallas*, 256 F.3d 281, 303 n.40 (5th Cir. 2001) (citing 42 U.S.C. § 6972(B).  And the Seventh Circuit has explicitly held that the statutory bars in RCRA are not jurisdictional. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483,

491 (7th Cir. 2011) (writing that it was "incorrect" for the district court to treat RCRA's statutory bars as "a question of subject matter jurisdiction"). In *Adkins*, the Seventh Circuit reasoned that "RCRA's limits on citizen suits appear in separate provisions that do not 'speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" *Id.* at 492 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 394 (1982)). Based on this authority, the Court finds that it has subject matter jurisdiction over this matter, and it proceeds to consider the parties' arguments under Federal Rule of Civil Procedure 12(b)(6).

### C.    Failure to State a Claim

Plaintiff's suit is barred under 42 U.S.C. § 6972. Under § 6972, "[n]o action may be commenced" under RCRA's citizen-suit provision if the EPA "has obtained a court order (including a consent decree) . . . pursuant to which a responsible party is diligently conducting a *removal* action . . . ." *Id.* (emphasis added). The relevant statute defines "removal" as "the taking of such . . . actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment." 42 U.S.C. § 9601 (23) (cross-referenced by 42 U.S.C. § 6972).

The consent decree requires the City to perform removal actions on an ongoing basis. In the consent decree, the Court notes that "contaminants

have been left in place beneath the geotextile mat" under Gordon Plaza.[28]  It also notes that the soil cap and geotextile mat "could be breached or degraded . . . by the failure to maintain the vegetative cover over the soil cap."[29]  As a result, the consent decree provides that "proper operation and maintenance practices and institutional controls are required to maintain the integrity of the cap."[30]  It orders the City to implement "[w]ork," *i.e.*, satisfy specified "compliance requirements,"[31] to "maintain the [soil] cap and provide for appropriate restrictions on the use and excavation of the property."[32]  As to Gordon Plaza, the consent decree requires the City to "use its available authorities to (a) require that landowners mow and otherwise maintain the grass vegetation on their properties, or (b) undertake the necessary maintenance directly."[33]  Additionally, the City must "maintain and repair the security fence,"[34] and "mow vegetation at least twice per year, and otherwise maintain . . . a stable vegetative cover" on property adjacent to Gordon Plaza.[35]

---

[28]     *See* R. Doc. 13-2 at 5.

[29]     *See id.*

[30]     *See id.* at 5.

[31]     The consent decree defines the term "Work" as "the compliance requirements set forth in Section V of the Decree."  *Id.* at 8-9.

[32]     *See id.*

[33]     *See id.* at 10.

[34]     *See id.* at 8 ¶ 5(a).

[35]     *See id.*

Plaintiff does not allege that the City fails to abide by the consent decree.   Instead, plaintiff argues that the consent decree requires maintenance-type actions that are not removal actions.   But this distinction plaintiff draws—without citation to authority—has no basis in the statute, which defines "removal" actions as those that "prevent, minimize, or mitigate damage to the public health" or "environment."   42 U.S.C. § 9601 (23).   As recently as 2018, the EPA stated that the actions the City has taken, and continues to take under the consent decree, are "protective of human health and the environment" and that those actions will "continue to be protective" into the future.[36]   In sum, plaintiff fails to plausibly allege that the City's continued actions under the consent decree are not   "removal actions."   Accordingly, § 6972 bars this suit.

## IV.   CONCLUSION

For the foregoing reasons, the City's motion is GRANTED.


New Orleans, Louisiana, this   5th   day of November, 2020.


_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE


---

[36]   *See* R. Doc. 13-3 at 3.

12